LASSELLE
v.
BARNETT.

---

## LASSELLE v. BARNETT and Another.

A mortgagee, by his statement to a third person that his mortgage was discharged, having induced him to take a mortgage on the premises, cannot afterwards set up a claim to the mortgaged property, nor can his assignee with notice, to the prejudice of the second mortgagee.

If land be conveyed in satisfaction of a mortgage, and the title afterwards prove defective, the defect may be the subject of a new demand, but cannot operate to revive the original contract, without the mortgagor's consent; nor can it with his consent, to the prejudice of a mortgage taken by another in the intermediate time.

*Quære,* whether an equity of redemption is subject to sale on execution.

The registry of a mortgage is, in judgment of law, notice of such mortgage to subsequent purchasers and mortgagees.

THIS was a suit in equity, transferred from the *Knox* Circuit Court previously to a decree, on account of the interest of the circuit judge (1).

HOLMAN, J.—*Dubois* held a mortgage on a house and lot in *Vincennes*, described as facing three streets and the *Wabash* river, and between *Fort Knox* and *Chappards*, the property of *Bazayon*. *Bazayon* was indebted to *J.* and *F. Lasselle* in the sum of 730 dollars and 75 cents, and proposed giving them a mortgage on the same premises; informing *F. Lasselle*, (who was transacting the business,) of the mortgage of *Dubois*, but said it was discharged. *Lasselle* applied to *Dubois* to learn the nature and extent of his claim, informing him at the same time that he was about to take a mortgage on the same premises. *Dubois* informed him that his mortgage was settled, and that *Lasselle* might take his mortgage with safety. *Lasselle* resided at *Detroit*, and was urgent with *Dubois* to deliver up his mortgage or enter satisfaction on it, as he (*Lasselle*) wished his business done that he might return home. *Dubois* replied that he could not do it for a few days, he having first to make an arrangement or settlement with *Bazayon*, but that *Lasselle* might rest assured it should be done. *Lasselle* took his mortgage, had it recorded at *Vincennes*, and returned to *Detroit*. This was transacted in 1809. About this time *Dubois* frequently spoke of his mortgage as being discharged. He afterwards set up a claim to about 400 dollars on the mortgage. This sum he claimed in consequence of his failing to obtain what he considered a legal title for a tract of land which he had purchased of *Bazayon*, called the *Bourdeleau* tract. But whether this tract of land was sold by *Bazayon*, in part discharge of the mortgage debt, or to pay a debt subsequently contracted, is left by the testimony somewhat doubtful. Some doubt may also be considered as resting on the title that *Dubois* received for the *Bourdeleau* tract of land. *Bazayon* had purchased of *P. Bourdeleau*, the executor and one of the heirs of *A. Bourdeleau*, who died seized of the said tract of land. *Bazayon* died; and *Dubois* was not satisfied with the title he thus derived through this purchase of *Bazayon*, inasmuch as there were one or two heirs of *A. Bourdeleau* whose claims had not been purchased by *P. Bourdeleau*. To quiet all dispute, a judgment was obtained against the estate of *A. Bourdeleau*, and this tract taken and sold

Nov. Term, 1821.

LASSELLE
v.
BARNETT.

under execution, and *Dubois* became the purchaser and received the sheriff's deed. The consideration that passed from *Bazayon* to *P. Bourdeleau* for this tract of land has also been the subject of much altercation, and remains clothed in some uncertainty; but it does not appear that *P. Bourdeleau* was dissatisfied on that subject, or had any desire to defeat the title of *Bazayon* or *Dubois* to the *Bourdeleau* tract. *Dubois* took possession of the land, exercised ownership over it for some time, and sold a cabin that stood upon it; and, when the deed was supposed to have been destroyed in the recorder's office in *Vincennes*, which was burnt in 1814, he advised with counsel about perpetuating his title. But afterwards, without the consent of the representatives of *Bazayon*, he abandoned the said tract of land, gave up to *P. Bourdeleau* such of the title papers as were in his possession, and set up a claim under the mortgage. In 1813, the said house and lot were taken in execution as the property of *Bazayon*, and sold, and *Barnett* became the purchaser for a small sum of money, and received a deed of conveyance from the sheriff; and afterwards, as he states in his answer, he heard of the existence of the aforesaid mortgages, and made inquiry respecting them in order to purchase one or the other for the purpose of securing his own title. He discovered the mortgage of *Dubois* to be the oldest, and, after learning from him all the transactions relative to the *Bourdeleau* tract of land, and receiving an assurance that upwards of 400 dollars were due on his mortgage, he purchased it in the year 1815; and, by agreement with *Dubois*, afterwards had the mortgage foreclosed in the name of *Dubois*, and the house and lot sold to satisfy the balance said to be due; and became the purchaser for the sum of 230 dollars, and received the sheriff's deed under the sale. In 1816 *F. Lasselle*, surviving partner of *J.* and *F. Lasselle*, had his mortgage foreclosed, and the same premises ordered to be sold. *Barnett* opposed the sale, and a jury was called by the sheriff to determine on their liability to be sold. The verdict was in favour of the claim of *Barnett;* and the sale was thereby prevented. *Lasselle* then filed his bill to set aside the mortgage of *Dubois*, the judgment of foreclosure, sale, and deed executed to *Barnett;* or to have the foreclosure opened, and his mortgage preferred, &c.; with a prayer for general relief.

Having collected these facts and allegations from the intricate and voluminous bills, answers, and exhibits, we are of o-

pinion that the declarations of *Dubois* to *Lasselle*—that his mort-
gage was satisfied, and that *Lasselle* might safely take a mort-
gage on the house and lot—are obligatory on him; and, whe-
ther he had received satisfaction or not, that he could not af-
terwards set up a claim under the mortgage to defeat the claim
of the *Lasselles*. This position is supported, in principle, by a
long list of cases, both at common law and in chancery. Pow.
on Mort. 466, 472.—1 Fonb. 163, 164, 165, and the authorities
there cited.—8 T. R. 50.—2 Vern. 370.—2 Atk. 49. It is e-
qually clear, that if the sale from *Bazayon* to *Dubois*, of the
*Bourdeleau* tract of land, was in part discharge of the mortgage,
that contract appears to have been executed both by title and
possession. And if that title was defective, the defect might be
the subject of a new demand, but could not operate in reviving
the original contract. Consequently, it was not with *Dubois*,
without the consent of *Bazayon* or his representatives, so to a-
bandon the title and possession of the *Bourdeleau* tract of land
as to authorize a claim against the estate of *Bazayon*. Nor
could such an act of abandonment, even with the consent of *Ba-
zayon* or his representatives, by any means affect the claim of
the *Lasselles*. If *Dubois* had a precedent claim under his mort-
gage, and agreed to receive a legal title to the *Bourdeleau* tract
in extinguishment of his claim; and, in pursuance of said agree-
ment, did receive a title which he considered to be legal, his
claim under his mortgage was at an end: and the mortgage of the
*Lasselles*, which had been suspended by the operation of his, im-
mediately acquired a vested right to precedency; which right
could not afterwards be divested by any act or agreement to
which the *Lasselles* were not a party. Consequently, in either
of these views, the right of *Dubois* under his mortgage was clear-
ly suspended by the mortgage of the *Lasselles*.

The conduct of *Dubois* in disposing of the benefit of his mort-
gage to *Barnett*, and through the agency of *Barnett* procuring a
judgment of foreclosure and sale of the mortgaged premises, was
calculated to defeat the claim of the *Lasselles;* and is therefore
strongly marked with fraud. The claim of *Barnett* rests on prin-
ciples somewhat different. He purchased the house and lot at
sheriff's sale, when sold under execution as the property of *Ba-
zayon* in 1813. It is unnecessary to inquire whether the equity
of redemption, which was all the interest remaining in *Bazayon,*
was a legal subject of execution (1), inasmuch as the mortgage

of the *Lasselles,* being of record, must be presumed to have been known to *Barnett* at the time he made this purchase. He is therefore to be considered as a purchaser with notice of their mortgage, and can have no pretence in equity to be preferred before it (2). In this view of the case, we have not considered the effect of the loss of this record by the destruction of the recorder's office at *Vincennes;* because the record was in existence at the time the purchase was made, and its subsequent loss could have no possible bearing on this part of the case. The right that *Barnett* acquired under the mortgage, would also be dependent on the notice he had of the nature and extent of the right of *Dubois,* if he had taken a regular assignment of the mortgage. But, instead of taking an assignment, he contracts with *Dubois* for the benefit of the mortgage, and proceeds in the name of *Dubois* to obtain that benefit: and cannot therefore, as a purchaser without notice, claim the advantage arising from the legal operation of the mortgage; but must take it subject to every equitable consideration to which it would have been subject, if it had remained for the benefit of *Dubois.* But if *Barnett* had taken an assignment of the mortgage of *Dubois,* his situation would not have been materially altered; for he must have been considered as a purchaser with notice of the superior claim and prior equity of the *Lasselles.* Although it is not manifest that he was informed of the first declarations of *Dubois* to *Lasselle,* or knew any thing of the repeated statements he had made to others, that his mortgage was discharged; yet he was well acquainted with the existence of the mortgage of the *Lasselles,* and understood the nature and particulars of the contract between *Bazayon* and *Dubois* respecting the *Bourdeleau* tract of land, which afforded him sufficient information to put him on his guard. And having purchased under these circumstances, the interest he acquired, if any, should be suspended until the mortgage of the *Lasselles* is satisfied. His agency in the foreclosure of the mortgage of *Dubois,* and in the subsequent proceedings, was also a fraud upon the *Lasselles.* The price of 230 dollars for which the mortgaged premises were sold, when alleged in the bill to be worth 2,000 or 2,500 dollars, although not of itself conclusive evidence of fraud, yet serves to heighten the fraudulent aspect of the whole case. And whatever might be the condition of an innocent purchaser under the sale, the condition of *Barnett,* by whose agency and for whose benefit it was effected, is by no

means altered thereby. The deed he procured from the sheriff under that sale, is consequently fraudulent and void.

*Per Curiam.*—It is decreed that the sale, under the judgment of foreclosure and order of sale obtained by *Barnett* in the name of *Dubois,* be set aside at *Barnett's* costs; that *Barnett,* within 30 days after service of a copy of this decree, relinquish the premises so bought under the order of sale, with special warranty, to the legal representatives of *Bazayon,* the conveyance to take effect from the date of the sheriff's deed executed under the order of sale; that *Barnett* and the legal representatives of *Dubois,* deceased, be enjoined from proceeding on the judgment of foreclosure and order of sale, until *Lasselle's* mortgage with the costs be paid, provided *Lasselle* proceed within 12 months to obtain the amount of his demand; and that *Barnett,* and the executrix of *Dubois,* deceased, pay costs, &c. (3).

*Hurst,* for the complainant.

*Dewey,* for the defendant.

(1) In *England,* an equity of redemption cannot be affected by an execution; but a judgment creditor may file a bill to redeem an incumbrance, provided he has taken out execution. 1 Mad. Ch. 418. In *New-York,* however, under the act concerning judgments and executions, an equity of redemption may be sold by the sheriff on an execution, *Waters* v. *Stewart,* 1 Caines' Cas. 47; but the interest of the mortgagee before foreclosure cannot. *Jackson* v. *Willard,* 4 Johns. R. 41.

(2) Acc. *Johnson* v. *Stagg,* 2 Johns. R. 510, 524, 525. A purchaser at sheriff's sale under a judgment rendered after the execution of a mortgage, but before its registry, is a purchaser with notice of the mortgage, if the sale be subsequent to the registry. *Jackson* v. *Dubois,* 4 Johns. R. 216.

(3) This cause was submitted at the preceding term, and continued by a *Cur. adv. vult.* During the vacation one of the defendants died. The practice in such case is, that the decree be ordered to have relation back, and be entered as of the day when the cause was finally heard. *Campbell* v. *Mesier,* 4 Johns. Ch. R. 342, note. If there be no defendant except him that dies, the practice is the same. *Dartmouth College* v. *Woodward,* 4 Wheat. 714,