## JACOB L. KAUFMAN *et al.*
### *v.*
## JOSEPH P. SMALLWOOD.

REDEMPTION FROM SHERIFF'S SALE. Where the purchaser of land at a sheriff's sale received from the judgment debtor a portion of the redemption money and agreed to wait a few days for the residue: *Held*, that by accepting a part of the redemption money without a stipulation reserving his right to a deed in case of failure by the debtor to pay the balance, he so far waived his legal rights that he was not entitled to a deed without tendering back the money he had received, or at least giving notice of his intention to rescind the arrangement and take out a deed, unless the balance should be paid in a reasonable time.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. CHARLES EMERSON, Judge, presiding.

This was a bill in chancery, exhibited by the defendant in error at the November term, 1861, of the Circuit Court, to set aside a sheriff's deed. The decree was in favor of the complainant, and the defendants sued out a writ of error. The facts are stated in the opinion of the court.

Mr. S. G. MALONE, for the Plaintiffs in Error.

Messrs. NELSON & ROBY, for the Defendant in Error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

Price recovered a judgment against Smallwood, the defendant in error, in the Circuit Court of Macon county, in 1859. Execution was sued out, under which an undivided half of certain mill property was sold, and bid in by Price, at the rate of $77 for each lot, making a total of about $400. After the sale, and before the year for redemption had expired, Smallwood sold and conveyed his undivided interest in said property to John H. Kaufman, one of the plaintiffs in error, giving a deed of warranty, and taking back a mortgage to secure the unpaid portion of the purchase-money, amounting to $1,700.

This was in September, 1860.  In March, 1861, shortly before the expiration of the year for redemption, Smallwood entered into an arrangement with Price, by which he paid the latter $255 towards the redemption of the property, and was to have a few days longer for the payment of the balance.  There was no stipulation that in the event of failure to pay the residue of the redemption money by any specified time, Price should have the right to take out his sheriff's deed.  Smallwood failed to pay, although several times requested by Price, and in September, 1861, the latter procured his deed from the sheriff, and advertised the property for sale.  In the meanwhile, February 25, 1861, John H. Kaufman had sold the property to his co-plaintiffs in error, who were his sons and son-in-law.  In October, 1861, Morthland, the son-in-law, in behalf of himself and his two brothers-in-law, J. G. and J. L. Kaufman, went to Price, made some threats about setting aside the sheriff's sale, and finally obtained a deed from him to themselves for the property in question, for which they paid him one hundred and eighty-two dollars.  Smallwood, learning this, filed his bill against Price, the Kaufmans, and Morthland, to set aside the deeds from the sheriff to Price, and from Price to his co-defendants. The case was heard on proofs, and the court decreed in conformity with the prayer of the bill.  This decree is now assigned for error.

It appears in the evidence that the mill property was worth from $10,000 to $11,000, and that John H. Kaufman was reputed insolvent.

We entertain no doubt as to the correctness of this decree. By accepting a part of the redemption money, with an agreement to give time for the residue, Price waived his right to a sheriff's deed.  He might have made it one of the conditions of his arrangement with Smallwood that, unless the residue should be paid by a specified time, the deed might be still taken out.  This, however, he did not do.  Or, under the arrangement actually made, it is probable he might have tendered back the $255 received, with notice to Smallwood that unless the amount due should be paid within a reasonable time,

32 — 36 ILL.

he should hold the contract rescinded and take out the deed. Whether he could have revived his right to a deed on mere notice to Smallwood of his intent to rescind the contract, without tendering back the money, it is not necessary to inquire. Certain it is, that without doing either one or the other, the procuring of a deed, and selling the title to the first comer, for a consideration almost nominal, was a summary disposition of the rights of Smallwood, which the law gave him no power to effect. It amounted to constructive fraud.

The only remaining question is, as to whether the Kaufmans and Morthland, when they bought of Price, had notice of the transactions between the latter and Smallwood. The evidence of Price, although he seems an unwilling or an unintelligent witness, taken in connection with the amount paid, and the relations of these parties to each other, leaves no reasonable doubt. Although the witness testifies that he could not remember that anything was said about the redemption money which had been paid by Price; yet he several times repeats, that when Morthland came to him, it was with an offer "to pay him the money that was back," amounting to one hundred and eighty-two dollars. This was for one-half of a property worth from ten to twelve thousand dollars. The witness was reluctant to convey, but was pressed by threats from Morthland that they would set aside the sale. He finally conveys for the trifling consideration just named. This same undivided half of the property had been sold, but a few months before, by Smallwood to the elder Kaufman, and by the latter to his sons, Smallwood holding a mortgage upon it for $1,700 against the elder Kaufman, and the latter being insolvent. It would be folly not to presume, in the presence of these circumstances, that when Morthland went to Price with his offer of the balance due, and with his knavish threats to set aside the sale if the latter would not convey, he had notice that Smallwood had paid a part of the redemption money, and what amount. It is difficult not to believe that the transaction was a clumsy fraud on the part of Morthland and the younger Kaufmans, attempted

for the purpose of depriving Smallwood of the benefit of his mortgage lien.

The decree does exact justice to all parties. Price has received his money. The younger Kaufmans and Morthland are refunded the money they have paid, and Smallwood retains the benefit of his mortgage lien.

*Decree affirmed.*