## John L. Whiting and another v. Milton H. Butler.

*Execution sales : Redemption : Junior purchaser : Ejectment.* December 28th 1865, one Drury bought at execution sale Theodore J. Campau's undivided interest as one of nine tenants in common in certain lands ; January 15, 1866, Godfrey, Dean & Co. caused an execution to be levied upon the same interest, and on the sale became purchasers, and on June 29, 1867, a sheriff's deed in due form issued to their assignees, who conveyed to one Butler; no steps were taken within the statutory period to redeem from the Drury sale, but on March 27, 1867, there was deposited with the register of deeds, but by whom is a disputed question, the amount of Drury's bid and interest, which on the next day was paid by the register to Drury, who endorsed upon his certificate of sale a receipt of the amount in full of his certificate ; in June, 1872, Drury quit-claimed to Theodore J. Campau, and in October, 1872, the sheriff executed

Whiting v. Butler.

a deed to him as Drury's assignee; Campau and his co-tenants, treating the Godfrey, Dean & Co. execution sale, as ineffectual, proceeded to have partition made in chancery of their individual interests, whereby the parcel in controversy in this suit was set off to Daniel J. Campau, who occupies by his tenant Whiting; Butler brings ejectment to recover the undivided ninth part of the premises under the title derived from the later sheriff's sale.

Whether these proceedings under the Drury execution operated to defeat the force and effect of the sale and deed under the later execution so as to be a legitimate defense to this action of ejectment:—*Quære?* Graves, Ch. J., and Campbell, J., holding the affirmative, and Cooley, J., with whom Christiancy, J., concurs, holding the negative.

*Execution sales : Partition.* A partition among tenants in common to which an execution purchaser of the undivided interest of one of them was not made a party will not affect the rights of such purchaser: *per Cooley, J., Christiancy, J., concurring.*

*Redemption.* The statutory right of redemption from an execution levy can only be exercised as against the interests of non-consenting parties, by a strict compliance with the statutory provisions: per Cooley, J., Christiancy, J., concurring.

*Execution debtor : Legal title : Failure to redeem : Sheriff's deed.* The interest of an execution debtor in lands levied upon and sold is something more than a mere right of redemption; he has still the legal title with all the valuable rights and privileges which that includes; and his legal estate is not divested by mere failure to redeem, so long as the sheriff's sale has not been carried into effect by deed; and for all purposes of a possessory action this naked legal right would be sufficient, and would enable the owner of it to appropriate all the beneficial use of the property, as against every one except the execution purchaser: per Cooley, J., Christiancy J., concurring.

*Right to redeem : Execution sale.* A mere right to redeem has never, under our statutes, been the subject of an execution sale: per Cooley, J., Christiancy, J., concurring.

*Execution debtor's interest in lands: Naked legal title.* The interest which an execution debtor has in lands sold upon execution, after the right of redemption has expired and before the execution purchaser's title is perfected by deed, is a leviable one; and an execution sale under a levy upon such an interest, when duly completed by deed, would convey the naked legal title which the prior incomplete sale had not divested: per Cooley, J., Christiancy, J., concurring.

*Redemption : Naked legal title : Execution sale : Ejectment.* It is immaterial whether the transaction in this case between Drury and the register of deeds amounted to redemption or not: if it did, the plaintiff would have the legal title without any condition or qualification, and if not, he would still have the legal title subject to be defeated when the Drury sale was carried into effect by the proper sheriff's deed; either of which would entitle him to recover in ejectment: per Cooley, J., Christiancy, J., concurring.

*Immaterial questions.* The fact of redemption being immaterial, it is likewise immaterial whether the money deposited with the register was paid by the execution debtor or not; and the refusal to submit this disputed question of fact to the jury was therefore not error: per Cooley, J., Christiancy, J., concurring.

*Execution purchaser : Right to a deed : Waiver.* The equitable right which an execution purchaser has to demand and receive a sheriff's deed after the period for redemption has expired, is one which may be lost by waiver at any time before the conveyance is actually made: per Cooley, J., Christiancy, J., concurring.

*Ejectment: Construction of statutes: Equities.* An action of ejectment which depends upon the construction of statute law is not to be determined upon the weight of the respective equities of the parties: per COOLEY, J., CHRISTIANCY, J., concurring.

*Ejectment: Extinguishment of lien: Rights of third persons: Revival.* Where the question is one of legal right, as in ejectment, a third person may take advantage of the extinguishment of a lien or title, though he had no equity to insist upon its being extinguished; and when it is once extinguished, it cannot be revived to his prejudice: per COOLEY, J., CHRISTIANCY, J., concurring.

*Execution sales: Rights of purchasers: Common-law definitions and analogies.* The precise nature and measure of the interest or rights arising upon the sale of realty on execution, before conveyance, is not to be determined by common-law definitions and analogies, but rather by construction of the statutory provisions: per GRAVES, CH. J.

*Execution sales.* The legitimate effect of the proceedings under the Drury sale was to vest in Theodore J. Campau, his assignee, and the holder of his rights, the full legal title which Campau as judgment debtor held in the lands when the Drury levy was made, and to cut off all title depending on the later levy and sale, unless the transaction with the register of deeds rendered the deed from the sheriff on the Drury sale not legally issuable: per GRAVES, CH. J.

*Execution sales: Redemption: Junior purchaser.* Nothing short of a valid redemption would invest the junior purchaser with the right to insist as matter of law as against both the judgment debtor and the purchaser at the prior sale, that the right of such prior purchaser to a deed from the sheriff was legally extinguished: per GRAVES, CH. J.

*Execution purchaser: Right to a deed: Remedy.* The right of a purchaser at execution sale to a deed after the expiration of the statutory period for redemption is so complete and fixed as to be cognizable at law and enforcable by *mandamus*, and not to require a resort to equitable remedies: per GRAVES, CH. J.

*Legal title: Equitable interest.* The right to the legal title, and the right to such deed as legal evidence of that title, are so closely and intimately connected and so near complete legal ownership of the land that the resulting interest or right cannot appropriately be called an equitable one: per GRAVES, CH. J.

*Execution sales: Attempted redemption: Estoppel: Res inter alios.* As between the immediate parties to the transaction whereby Drury received the amount of his bid, the latter might, after having once treated it as redemption, be precluded by circumstances raising an estoppel from afterwards shifting his ground; but as against the holder of the junior right, in whose favor no such estoppel has arisen, it is competent for them by mutual agreement to treat the transaction on one day as redemption and on the next day as something different: per GRAVES, CH. J.

*Ejectment: Equitable rights.* If that transaction could be urged in any shape by the representative of the junior sale, it could only be as presenting considerations of an equitable nature, not available on the trial of the pure legal title in an action of ejectment: per GRAVES, CH. J.

*Redemption.* That transaction, whatever it may be called, was one wholly insulated and confined to the immediate parties, and not capable of receiving any impression from the statute from its own inherent force: per GRAVES, CH. J.

*Execution purchaser: Right to a deed: Extinguishment: Waiver: Question of fact.* Even if the right to a deed on the prior purchase could in any way be extinguished by an act which could only produce that effect by reason of a waiver of the right, the question of waiver would be one of fact to be submitted to the jury: per GRAVES, CH. J.

*Execution sales: Statutory rights.* The rights involved in this case are all legal rights, depending upon the statutes and nothing else, and must be considered in that light: per CAMPBELL, J.

*Execution creditors: Redemption.* The right given by the statute to execution creditors to acquire the interest of a prior execution purchaser by payment of the amount of the bid and interest after the time for redemption has expired, would not be open to them after a sale to them upon their execution; they would then have only the same right to redeem from the prior sale as the execution debtor himself has: per CAMPBELL, J.

*Execution sales: Junior purchaser.* On the expiration of the statutory period without redemption, the Drury title became indefeasible; and the deed thereafter issued on it to his assignee operated to defeat the title under the junior purchase: per CAMPBELL, J.

*Execution purchaser: Equitable estate: Assignment: Statute of frauds.* The interest of an execution purchaser, though not the legal estate, is an equitable estate which our statute protects by an action of trespass or waste, before deed, and which, after deed, relates back to the sale, for injury to the land; it is an interest capable of assignment, but requiring an assignment to be executed and acknowledged like deeds of land; and it can only be divested, otherwise than under the statute of redemption, by an instrument conforming to the requirements of the statute of frauds: per CAMPBELL, J.

*Redemption: Statutory rights.* The statutory redemption, being exceptional, cannot be made valid except in conformity to the statute by the proper parties and within the statutory period: per CAMPBELL, J.

*Parol redemption: Interest in lands: Transfer: Estoppel: Statute of frauds.* The transaction between the register of deeds and Drury, being too late to operate as a parol redemption, could only have force as a contract; and being invalid under the statute of frauds as a transfer or release of an interest in lands, and there being no ground for it to operate as an estoppel, it could have no bearing on the case: per CAMPBELL, J.

*Execution purchaser: Purchaser under contract.* The interest which is obtained by an execution purchase which is not lawfully redeemed, and before deed, is precisely the same that is obtained by a purchase paid for under an executory contract: per CAMPBELL, J.

*Practice: Divided court: Costs.* Where a judgment is affirmed under the statute (*Comp. L.*, § 4923) by reason of the court being equally divided, costs of the supreme court will not be awarded to the defendant in error.

*Heard May 14, 1873. Additional briefs submitted at the October term. Decided April 8.*

Error to Wayne Circuit.

*Henry M. Cheever* and *C. I. Walker,* for plaintiffs in error.

*John J. Speed* and *R. P. Toms,* for defendant in error.

COOLEY, J.

This case presents important questions regarding the rights of purchasers at execution sales.

In October, 1865, Theodore J. Campau was the owner of an undivided one-ninth interest in certain lots in Detroit. On the 15th day of January, 1866, Godfrey, Dean & Co. caused an execution, issued on a judgment in their favor, rendered by the circuit court for the county of Wayne, to be levied on that interest, and a sale to be made on the 24th of March following, for the amount due on the judgment and costs. The judgment creditors became purchasers at the sale, receiving the usual sheriff's certificate, and afterwards assigned their interest therein to Milton H. Butler and F. E. Driggs. Neither the judgment debtor nor any other person redeemed from this sale, or as creditor acquired the rights of the purchasers under the same, and on June 29, 1867, the sheriff executed to Butler and Driggs the usual deed to carry the sale into effect as provided by the statute. In 1868 Driggs conveyed his interest to Butler. It is not disputed that the sheriff's sale and all the proceedings to perfect title under the same were perfectly regular and in accordance with the law. Theodore J. Campau and his co-tenants nevertheless treated the sale as ineffectual, and proceeded to have partition made of their individual interests in chancery, and a certain parcel now in controversy in this suit was set off in severalty to Daniel J. Campau, who now occupies the same by his tenant, John L. Whiting. The present suit is by Butler, who seeks to recover the undivided one-ninth part of the premises under the title derived from the sheriff's sale.

If the case presented no other facts than these the right of the plaintiff to recover would seem to be unquestionable. He acquired, in the words of the statute, "all the rights and interests that the debtor had in and to the lands so sold at the time of the levy by virtue of the execution."— *Comp. L. 1871*, § *4628*. And not having been made a party to the proceedings in partition, he is entitled to recover as if they had never taken place.

But the defendants insisted that these proceedings were rendered ineffectual by others which were prior and para-

mount; and it becomes necessary to consider such prior proceedings. It appears that previous to the recovery of judgment by Godfrey, Dean & Co. one Edward A. Drury had caused execution on a judgment against Theodore J. Campau in his own favor, and rendered by the same court, to be levied upon the same premises, and a sale to be made December 28, 1865, at which he became the purchaser. No redemption from this sale was made by the judgment debtor within the year allowed by the statute for that purpose, nor did any creditor acquire the right of the purchaser within the three months following the expiration of the year; and Drury, consequently, on the 29th day of March, 1867, became entitled to the usual sheriff's deed, unless his right was lost by accepting the amount of his bid and interest as hereinafter stated.

Had this sale been duly and legally carried into effect by the execution of a deed to Drury, or to any one who, as his assignee, had become vested with his rights, it could not be denied that all rights acquired or derived under the sale to Godfrey, Dean & Co. would have been cut off and extinguished. But it was claimed by the plaintiff that until the Drury sale was perfected by deed this consequence could not follow. The assignee of Godfrey, Dean & Co. having acquired by their purchase and the assignment thereof all the rights which Theodore J. Campau had at the time their levy was made, and having procured the proper legal conveyance, neither the judgment debtor nor any one claiming, as the defendants did, under him, can resist his right to recover by showing merely that a right to obtain a paramount title has accrued to some third person, which right, however, the person entitled to it has never seen fit to assert by procuring such title. The argument is, that a suit in ejectment tries the legal title only; and that when that and that alone is in controversy, it is wholly immaterial that some third person is possessed of a paramount equitable right which he would be at liberty to convert into a legal title if he chose. When he obtains his legal

title, and only then, can he enforce a right of possession; and not until then can his rights be made use of to defeat a claim to possession by another otherwise entitled.

But the defendants, on the other hand, insisted that this view must be erroneous, because after the sale on the Drury judgment nothing remained in Theodore J. Campau which could be levied upon by a junior creditor except a right to redeem; and we are told on the argument and in their brief that all that was acquired by the purchasers at the second sale was a " mere right to redeem." If this is so, then the position assumed by the defendants is impregnable; for it is conceded that neither the judgment debtor nor any person claiming under him made redemption within the time allowed by law; and we fully agree with the counsel for the defendants that this statutory right of redemption can only be exercised, as against the interests of non-consenting parties, by a strict compliance with the statutory provisions. The mere right to redeem was consequently lost on the 29th day of December, 1866, and the right of creditors to acquire the rights of the purchaser at the execution sale was lost three months later.

But is it true that Theodore J. Campau, at the time sale was made on the second execution, had in the premises a mere right to redeem? Most certainly he had something which was very much beyond and above any such mere right. He had the legal title. As owner he might sell and convey the land and deliver possession, might mortgage and lease, might receive the rents and profits, might defend his possession by legal proceedings, or even by force, and if an intruder had obtained possession, might have ejected him by all the same remedies which would have been admissible had his title been subject to no contingency or condition. Nor would these rights, extensive and valuable as they were, have been forfeited or lost by a mere failure to exercise the right to redeem. If they were, they must have been lost or forfeited to some other person than Drury, for his rights could only, under the statute, have been per-

fected so as to divest the legal title of the judgment debtor and enable the purchaser to demand possession and maintain a suit for its recovery, when the sheriff's sale had been carried into effect by deed.   But if Drury could not insist that the legal estate of the judgment debtor had determined previous to the execution of a sheriff's deed, it is obvious that no third person could make the claim for him.   He was at liberty to leave the legal title in the judgment debtor indefinitely if he saw fit.   It is true that after Drury had become entitled to a sheriff's deed, Campau's title would have been a mere legal title with the whole equitable right in Drury, but for all the purposes of a possessory action the mere legal title would have been equally beneficial with any other, and as against any person except Drury, this naked legal right would have enabled Theodore J. Campau to appropriate to himself the beneficial use of the premises.   To speak of his right as a mere right to redeem is consequently incorrect and misleading, for it was something very much more and greater while that right existed, and it did not terminate when the right to redeem was gone, but might continue at the will or through the inaction of another indefinitely.

Moreover, if we examine our statutes we shall find that a mere right to redeem has never been the subject of an execution sale in this state.   It is true that interests which were liable to be defeated by a failure to redeem have been salable, but in every instance these have been legal titles. What we call the equity of redemption in mortgaged lands is subject to levy and sale, but this is for the very reason that we recognize the owner of that equity as legal owner of the land, and the term " equity of redemption," as applied to his interest, is well understood to be now, whatever it may have been formerly, a misnomer.   Had he a mere equity or right to redeem, it would not be the mortgagor, but the mortgagee, who would be considered owner of the land, and as owner, it would be the interest of the mortgagee which could be sold on execution.   This, however,

29 MICH.—17.

has never been allowed in this state. And though other parties have had rights to redeem, distinct from any ownership of a legal title,—such as second or other subsequent mortgagees, judgment creditors with levies, mechanics with liens, etc.—it would require an express statute to subject these rights to attachment and sale on legal process, and a very great change in our practice and notions on such subjects before such a statute would be likely to be adopted.

Having thus seen what rights the judgment debtor had in the land at the time the execution of Godfrey, Dean & Co. was levied, it would seem not difficult to determine what passed by the deed given to carry into effect the sale made by virtue of that execution. The statute itself determines that, when it declares that the purchaser shall acquire all the rights and interests that the debtor had when the levy was made. It follows that the plaintiff became legal owner of the land, and as such might sell, convey and mortgage, might maintain possessory actions, and if in possession, might defend his possession in all admissible methods. It is true that he might have had as against Drury the legal title only, with no equities; but, as we have already seen, this was equally available with any other for the purpose of a suit in ejectment, and might have continued indefinitely for all beneficial purposes unless terminated by Drury asserting and enforcing his right to a sheriff's deed.

Some further facts were proved in the case which it seems proper now to refer to, because both parties appear to have attached importance to them in the court below. On March 27, 1867, some person,—and all the evidence tends to show that it was Theodore J. Campau,—paid to the register of deeds for Wayne county the amount of Drury's bid and interest, and the register made an endorsement on the certificate of sale in the following words: " Cancelled by payment in full of principal, interest, and costs, amounting to five hundred and sixteen dollars and fifteen cents, which payment and cancellation is by order

of Ed. A. Drury, March 27, 1867. Wm. E. Warner, Register." On the next day Drury endorsed on the same certificate the following receipt of the moneys: "Received of Wm. E. Warner, register of deeds, five hundred and eleven dollars in full of this certificate. E. A. Drury. Detroit, March 28, '67." June 15, 1872, Drury quit-claimed to Theodore J. Campau all his rights under the sale made to him, and October 12, 1872, the sheriff of Wayne county executed to the same person a sheriff's deed, as assignee of Drury's rights as purchaser at the execution sale.

In order to determine what the significance of these facts is, it will be well to see at the outset what it is that the parties respectively claim from them. We understand the plaintiff to claim that, though the legal right of Theodore J. Campau to redeem was gone nearly three months before, yet Drury might, if he saw fit, waive all advantage from lapse of time and accept the money afterwards; that this is what he did in this case, and the money having been paid by the execution debtor, and received by way of redemption, the redemption was as perfect and complete as if made in due season, and all rights under the Drury purchase were thereby determined.

If we are right in what we have already said, it is wholly immaterial in the present suit whether the payment of this money to the register of deeds and its receipt by Drury amounted to redemption or not. If it did, the plaintiff would have the legal title to the land without any condition or qualification; if it did not, he would still have the legal title, but subject to be defeated when the Drury sale was carried into effect by the proper sheriff's deed. And we do not understand the defendants to claim that that has ever been done.

The defendants, on the other hand, insist, *first*, that the facts could constitute no redemption unless the money was paid by Theodore J. Campau, which they do not admit, and which, being a disputed fact, should have been, but was not submitted to the jury. To this it may be replied that,

as the fact of redemption having been made has already been found to be immaterial, it is of no concern here whether the execution debtor made the payment to the register or not, unless he claims that, by virtue of making it, he became purchaser of Drury's rights in the certificate of sale. Whether he could become such purchaser, and thereby become entitled to a sheriff's deed, which would cut off subsequent execution sales, is a question which it will be early enough to consider when the right is claimed. It is not claimed in this suit, and cannot be so long as the fact of Theodore J. Campau having made the payment to the register is denied by the parties claiming under him.

The defendants insist, *secondly*, that when Drury's rights became absolute as against the judgment debtor, he could not *waive* them in favor of any person, *waiver* not being an admissible mode of passing title to lands. The inference to be drawn from this would seem to be, that the rights which became perfected in Drury by the failure of the parties entitled to redeem, remained in him notwithstanding his acceptance of the money from the register, at least until he gave the quit-claim deed to Theodore J. Campau.

If Drury had a legal title, it would be perfectly correct to say he could not have parted with it by mere waiver. But as we have already seen, he had no legal title. The very reason for requiring the sheriff's deed is in order to pass a title which otherwise would remain in the execution debtor. Until the purchaser receives it, he holds a certificate of sale which entitles him to demand a conveyance unless the moneys specified therein are paid by a day named. But although, on the view already taken, it is of no importance in this case, it would be contrary to all analogies if the right to this conveyance could not be waived at any time before the conveyance was actually made. It has been repeatedly held that a mortgagee, though entitled to claim the fee under foreclosure proceedings, if he voluntarily accepts payment afterwards, thereby opens

the foreclosure and waives his right to insist upon it.— *Deming v. Comings, 11 N. H., 474; Batchelder v. Robinson, 6 N. H., 12; Lovell v. Leland, 3 Vt., 581; Converse v. Cook, 8 Vt., 164; Smalley v. Hickok, 12 Vt., 153; Mc-Neil v. Call, 19 N. H., 403.* It scarcely needs authorities to prove that this principle is applicable to execution sales as well, but *Kaufman v. Smallwood, 36 Ill., 504* may be referred to.

The defendants contend, *thirdly*, that whether the lands were redeemed from the Drury sale or not, is of no concern to the plaintiff, since Godfrey, Dean & Co. had already forfeited and lost their own right to redeem, and thereby lost all right and interest in the premises, and consequently it was immaterial to them what was done in respect to the lands afterwards. And under this head the argument is pressed upon us, with some plausibility at least, if not with some force, that after Godfrey, Dean & Co. had failed to protect their purchase by redeeming from the sale to Drury, they had and could have no equity which would entitle them afterwards to insist upon a revival and restoration of their rights by means of something done by a third person in a transaction to which they were strangers, and not in any degree intended for their benefit. If it were important to do so we might pause to consider the question whether this argument is not fully met and answered by the reply that neither Theodore J. Campau nor his assignee has any equity which could justify his holding the land without making payment to Godfrey, Dean & Co., or to their assignee, of the amount of their judgment; and that if the payment of the Drury demand, though made by a third person, would have enured to the benefit of Theodore J. Campau, and revived his right to the land in case the sale under which the plaintiff claims had not been made, then, upon all sound principles of equity, such payment, under the circumstances of this case, must enure equally to the benefit of the plaintiff, who had acquired, subject only to the Drury sale, all the rights of Theodore in the land.

But a case depending upon the construction of statute law is obviously one which cannot be disposed of by a court on the view of the judges of the respective equities of the parties.   The case we have under consideration is a case of strict legal rights, and as such we are required to consider and decide it.   Now, as we have already found, it is of no concern to the plaintiff in the present suit whether or not there was a redemption; not for the reason assigned by defendants, but because plaintiff is in possession of an apparent legal title, perfected in strict compliance with the statute, and only subject to be defeated by the obtaining of a paramount title under the Drury sale by means of a sheriff's deed.   No such paramount title is claimed; for, as we have already seen, the defendants do not admit that Theodore J. Campau paid the money to the register, and they cannot, therefore, claim that the sheriff's deed to him has any force whatever.   It is a fact of no significance in the case.   And when the question is one of legal right, nothing is better established than that a third person may take advantage of the extinguishment of a lien or title, even though he had no equity to insist upon its being extinguished, and that when it is once extinguished, it cannot be revived to his prejudice.   Thus, it has been held that if a mortgagor makes payment on a mortgage, though without having it endorsed or taking a receipt, and afterwards the money is handed back, a junior mortgagee may nevertheless insist upon the benefit of the payment, though he was no party to the transaction, and would seem to have had no equity entitling him to insist upon it.—*Marvin v. Vedder, 5 Cow., 671.*   And when land is mortgaged by husband and wife, a purchaser of the husband's equity of redemption who pays off the mortgage cannot afterwards defend against the woman's claim to dower, though if he had had the transaction assume the form of a purchase he would have had a clear right to do so.—*Atkinson v. Angert, 46 Mo., 515.*   See also *La Vergne v. Evertson, 1 Paige, 181; Miller v. Lewis, 4 N. Y., 561; Lasselle v. Barnett, 1 Blackf.,*

*150.* These cases are only illustrations of the general rule we have given, and which would preclude Drury, after voluntarily accepting the cancelment of the sale, from transferring rights under it, even though the parties benefited by the cancelment had no equities to insist upon the benefit. They are benefited fortuitously by the destruction of an adverse right, which, though they could not require it to be destroyed, is as effectually put an end to by the voluntary act as if done under compulsion of law. If, therefore, under the facts appearing, Drury had taken a deed from the sheriff and then deeded to Campau, or if we could treat what took place as equivalent, it would not aid the defendants. Drury's rights as purchaser being once terminated, were gone for all purposes and as to all persons.

This being a case of considerable importance, both in the principle and in the amount involved, we have considered it with the utmost care and deliberation, examining all the cases referred to in the briefs, and many others, but are brought to the clear conviction that the judgment of the circuit court is correct. That judgment will consequently be affirmed, with costs.

CHRISTIANCY, J., concurred.

GRAVES, CH. J.

On the 28th day of December, 1865, Drury bid off Theodore J. Campau's interest on execution and received the sheriff's certificate. On the 15th of June, 1872, he assigned his interest under the certificate to Theodore, who, as such assignee, received from the sheriff on the 12th of October, 1872, a deed in due form. On the 24th of March, 1866, Godfrey, Dean & Co. bid off Theodore's interest on execution and took the sheriff's certificate, which they assigned to Butler and Driggs, and on the 29th of June, 1867, the sheriff deeded to them as assignees of the certificate, and subsequently Butler acquired Driggs' interest.

It is hardly safe to resort to common-law definitions for the precise nature and measure of the interests or rights arising upon the sale of realty on execution before conveyance. The whole matter is mainly the work of legislation, and it is quite artificial and peculiar. Rights and duties attach here and there, according to the positions and relations of parties, and shift and vary with the changes produced by time and circumstances. Many complications are possible, and often arise, and the way is open to serious misapprehensions if common-law analogies are greatly relied on. The debtor has his rights as against each successive purchaser or creditor, and each purchaser and creditor has his rights as against the debtor, and other rights as against every other intervening creditor.

When the sale is regularly made and the certificate issued, a part of the facts have happened which go to invest the purchaser with the legal title seized on the execution as it stood in the debtor. But the debtor is under no duty or obligation to allow the remaining facts to happen as if he were under a contract to convey. He and others holding specified positions, or possessing certain characters, are expressly authorized to intervene in definite ways and times, and preclude the completion of title to the lands in the purchaser. And without regard to the purchaser's assent or dissent, any person possessing the character or within the statutory conditions may make the purchaser's bargain and rights the basis of advantage to himself. The various rights which refer to the title and its transit flow chiefly from the positions of parties under positive regulations, and not from conventional arrangements.

Now, all that Godfrey, Dean & Co. got, or could get, by their second purchase was what was left in Campau after the sale to Drury. Their purchase was inevitably subject to whatever right was given by the sale to Drury. Both purchases were contingent, but the contingencies were different. Both were subject to redemption by Campau. Drury's purchase was also subject to redemption by Godfrey,

Dean & Co., but it was not subject to be cut off by failure to redeem from an earlier sale, because there was no such sale to redeem from. The purchase by Godfrey, Dean & Co. was, however, subject to be cut off by non-redemption by themselves or Campau from the prior sale to Drury.

The holder of the Drury right, then, only needed to be passive and allow the time given for redemption to run out, in order to be entitled, if no redemption was made by any body, to a conveyance from the sheriff which would cover the legal title, and cut off all subsequent claims, including the purchase by Godfrey, Dean & Co. The mere lapse of time would be enough, if there was no redemption, or the sale was not made abortive in some way. The holder of that right had no new step to take in order to become fully entitled. Not so with Godfrey, Dean & Co. As against Campau, it is true they had only to wait; but as against the Drury right, the preservation of their beneficial position required them to be active and see to it that the purchase by Drury was not allowed to ripen into a title which would exclude their chance and extinguish their claim to the land. This they did not do. Campau slept, and Godfrey, Dean & Co. and their assignees also slept until too late to redeem from the Drury sale. But then, no deed having yet been given on that sale, the assignees of the Godfrey, Dean & Co. purchase proceeded to take from the sheriff a deed on their junior purchase. And afterwards the sheriff also delivered a deed in execution of the prior sale to Drury.

Now, it appears to me that the legitimate effect of these transactions was to vest in the holder of the Drury right, who was the grantee in this last deed, and of the prior purchase, the full legal title which Campau, as judgment debtor, held at the time of Drury's levy, and necessarily to cut off the later initiated proceedings by Godfrey, Dean & Co., and all title depending on such proceedings; unless it should turn out that by force of a transaction now to be

mentioned the deed from the sheriff on the Drury sale was not *legally* issuable.

That transaction was as follows: Before any deed was due on the Godfrey, Dean & Co. sale, and after the expiration of the time given for redeeming to the execution debtor and to purchasers from the sale to Drury, namely: on the 27th of March, 1867, Campau, the execution debtor, left with the register of deeds, and for the expressed purpose of redeeming, the sum requisite to redeem from the Drury sale, and on the next day Drury received the money from the register as in satisfaction of the sale. Some time afterwards, and after the deed given by the sheriff on the Godfrey, Dean & Co. purchase, Campau and Drury treated the transaction as not a redemption, and they have since, as the case indicates, continued to agree in denying that character to it.

Now, the question precisely here is not as to whether Drury transferred his right to Campau, or as to what formalities would have been essential to such a transfer, nor whether Campau might not have claimed at his election, as against Drury, that the right to a deed was no longer available to Drury, but it is whether the representative of the Godfrey, Dean & Co. purchase was, as he was *then situated*, enabled to claim against the contention of both Campau and Drury, and set up in the ejectment suit as legal ground, and as legal ground too of his own, that the right to a deed on the Drury purchase was legally extinguished.

If these acts of Campau and Drury were adequate to legally blot out Drury's right and sever his tie to the land and invest the representative of the junior purchase with the right to insist as against both of them, as matter of law in his ejectment, that Drury's right to a deed was determined, it must have been because the circumstances constituted a valid redemption under the statute, conclusive upon every body, and wholly irrevocable. There is no other ground for maintaining the position assumed by

defendant in error. Now, when these facts occurred, the time limited by law for redemption had expired and Drury was entitled to his deed. His right to a deed had become complete and vested. All he lacked of a legal title to the land, superior and paramount, was the legal evidence such a deed would afford, and his right to this evidence or muniment was not contingent, not dependent upon the will or discretion of any one. It was so complete that it was not necessary for him to resort to equity to obtain it if withheld. The right to it was so plainly and exclusively fixed and legal as to be cognizable at law and enforceable by *mandamus.*— *People v. Fleming, 4 Denio, 137; S. C. 2 Comst., 484; People v. Ransom, 4 Denio, 145; S. C. 2 Comst., 490; Van Rensselaer v. Sheriff, 1 Cow., 501; People v. Baker, 20 Wend., 602; Ex parte Raymond, 1 Denio, 272; Ex parte Elwood, ib., 633; Ex parte Stevens, 4 Cow., 133; Ex parte Bank of Monroe, 7 Hill, 177; People v. Covell, 18 Wend., 598; Marbury v. Madison, 1 Cranch, 137, 165; Martin v. Board of Auditors, 5 Mich., 223; Secretary of State v. Ins. Co., 19 Mich., 392.*

The right, then, to the legal title, and the right to the deed as legal evidence of that title, were very closely and intimately connected, and they were so near complete legal ownership of the land, and so peculiar in character as to make it somewhat hazardous to speak of the resulting right or interest as a mere equitable title. The right itself to redeem and the proceedings to effectuate it, are all statutory. The matter is not left to independent conventional arrangement. It is still doubtless true that immediate parties may, as respects themselves and without affecting the rights of others, dispense with many formalities, and that the party so dispensing may, on the objection of the other party, or of one in privity with him, be precluded from afterwards taking advantage in any way of the irregularity to which he assented; and further, that he may be precluded from afterwards shifting his ground, by an objection from a party who may have justifiably taken steps or altered his posi-

tion in reliance upon the act or acts claimed to be irregular. But here the holder of the junior right had no connection with the transaction in question. He was separated from it by the interrupting gulf caused by the lapse of statutory time. He took no step to get title on the supposition or assumption that the payment in question constituted redemption. He was not misled by it, and the immediate parties in effect unite in repudiating it as one of redemption.

What is there to prevent their giving to that transaction any complexion they choose; from giving it one name or character on one day, and a different one on another; and from being entitled to say that the matter was and is one of pure conventional discretion, subject to their separate control, and with which, as he was and .is situated, the claimant under the junior purchase neither had nor has any legal concern whatever?

He made no attempt to redeem, and, so far as appears, never thought of redeeming. The time given him therefor had expired, and he was in no position to make any legal objection to any course Campau and Drury saw fit to take. Drury had become entitled to a deed, and Campau could not object to his getting one. The law of redemption had become inapplicable by lapse of time. It certainly could not operate upon a mere outside agreement for redemption, any further than the agreeing parties should choose to make it operate. The law, then, I think, did not apply to the act in question so as to transform it into an out-and-out irrevocable statutory redemption. What was done was mere matter of extra-statutory compact between Campau and Drury, and wholly subject to their will. They could agree that, as between themselves, the land should be considered as redeemed, and then agree that it should not be so considered, without opening any door for the holder of the junior claim, and without giving him any power to intervene on the ground of legal right.

The relative situation of the parties was such at this time that the holder of the elder right could bargain with

Campau without being liable to have what he did turned into an irrevocable statutory redemption by the election and intervention of the junior claimant. Considering, then, the independent situation of the parties, I am not ready to say that the defendant in error was permitted to allege and claim, in his own behalf, in support of his ejectment and against their construction, that the transaction between Campau and Drury was a completed redemption, reaching back and letting in his claim.

Campau and Drury could agree that there should be a redemption as between them only, or they could pass money backwards and forwards and call it redemption, or whatever they pleased, and then treat the business as of another nature, without giving rise to a new legal right in the holder of the junior claim, and without giving him the right to say that any mere conventional redemption, confined to them, and which equity might support as between them and their privies, must be held at law as going further and rehabilitating him with legal right and title.

Let it be conceded, however, that, as between themselves, Campau and Drury have all along, since the 27th of March, 1867, treated their arrangement as a conventional redemption, and I am still inclined to the same result.

Drury, formally at least, assigned to Campau, and the sheriff in fact deeded to him as lawful assignee, and these proceedings upon their face completed the superior legal title in Campau, and are available at law against every body showing no better legal title, and it may, I think, be contended that if the proceedings between Campau and Drury in March, 1867, could be urged in any shape by the representative of the junior sale, they could only be urged as presenting objections of an equitable nature, not available on the trial of the pure legal right. In view of the time, and what was done and what omitted, and of the order of events, the transaction between Campau and Drury, whatever they called it, was one which was wholly insulated and confined to the immediate parties, and not capable of receiv-

ing any impression from the statute through its own inherent force.

The relation which had formerly subsisted through the statute between the rights forming the coterie of rights represented by the judgment debtor and the execution purchasers and their assigns had before then expired with the time limited by that statute for its existence, and as a consequence there remained no such inter-dependence and connection as to cause any legal right which had arisen on the Godfrey, Dean & Co. purchase, to bear upon the transaction between Campau and Drury, or as to cause that transaction to operate to the legal advantage or disadvantage of the holder of that nominal right, in his character of holder of it. The planks had become dislocated and separated, and each party was at liberty to steer in his own way for such harbor as he could find.

But suppose we admit that it was practicable for the plaintiff in ejectment, who counted on the junior purchase, to allege that the right to a deed on the prior purchase was extinguished by an act which of course could produce that consequence only upon the supposition that the right given by lapse of time was in fact waived; then I am inclined to think that the question of waiver was one of fact for the jury, under proper instructions, and which the defendants were entitled to have submitted to that tribunal.

CAMPBELL, J.

In order to ascertain the rights of the respective parties, it is necessary to bear in mind the dates of the several transactions. Butler cannot recover if his title has been cut off, and this depends upon the statutes, and upon nothing else. The rights involved are all legal rights in their existing aspect, and must be looked at in that light.

Drury bid off Theodore Campau's rights on execution sale on December 28, 1865. Under the statute the defendant in execution, and purchasers by execution or otherwise

of his right, could redeem within a year, or by December 28, 1866. Judgment creditors could, after this, and within three months, acquire the purchaser's interest by a process similar in its forms to redemption, but giving them a complete right unless within the same period acquired from them by some one else under like conditions, so that the last judgment creditor paying off the rest would acquire the title clear.

On March 24th, 1866, Godfrey, Dean & Co., who had been up to that time judgment creditors, ceased to be such by purchasing on their execution for the amount of their judgment. They did not redeem, as they might have done before December 28, 1866. After that time they could not have done so, as they had no longer any unsatisfied judgment. But they never attempted to redeem at any time, before or after. There was no privity between them and Drury, which could give them any rights against him except such as the statute allowed. They had no claim against Theodore Campau, except as to such interest as they sold, and the title they got under their sale was subject to be defeated at any time by any title derived in course of law through the Drury sale.

Unless destroyed by redemption, the Drury title became an indefeasible right as soon as the statutory period of fifteen months expired. And any deed thereafter issued upon it must defeat the Godfrey title. The interest which Drury obtained by his execution sale was a vested and valuable interest, defeasible only by proceedings under the statute. Though not the legal estate, it was an equitable estate, which the law protected by an action of trespass or waste, before deed, and which, after deed, related back, for all purposes of suit for injury to the land.—*Comp. L.*, §§ *4657*, *4658*. It was an interest not only capable of assignment, but requiring, in order to make the assignment valid, that it be executed and acknowledged in the same manner with deeds of land.—*Comp. L.*, § *4670*.

The only method whereby any person can lawfully

become divested of an interest in lands, is by conforming to the statute of frauds, or by the statute of redemption. This statutory redemption, being exceptional, has never been allowed to be made valid except in conformity to the statute, and within the statutory period. If made within that time it may be by transactions involving no writings to perfect them.—*Comp. L.*, §§ *4640–3.* But even then the authorities are clear that it can only be done by the right parties. And any transaction except under the statute is only valid as a contract, and must be maintained, if at all, by conforming to the statute of frauds, whether made before or after the time of redemption, unless possibly where it can be made to operate as an estoppel, which does not arise in this case as to Butler, and of which there is no evidence as to any one.—*Miller v. Lewis, 4 N. Y., 560; People ex rel. Chase v. Rathbun, 15 N. Y., 528.*

When the money was paid at the end of the fifteen months, and accepted from the register by Drury, whoever may have paid it, there was no agreement of any kind made or pretended to have been made, either verbally or in writing. It was too late for any interest to become operative by way of redemption. If it could operate as a verbal purchase, it could only be enforced in equity, and even then could only be made operative by compelling a written assignment. The statute ceasing to operate in favor of parol redemption, the interest could only be taken out of Drury by some kind of transfer or release. And there is no rule of law which will allow an interest to go out of one person without going into another. Whoever should take any release from Drury must succeed to his rights or hold such a title as would merge them.

The statute of frauds covers every imaginable case where an interest is divested by any act of the party concerned. It applies to surrenders as well as transfers, and excludes the idea that there can be any waiver (if there be such an act concerning lands), unless it is written. The language used is: "No estate or interest in lands, other than leases

for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, *surrendered or declared*, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, *surrendering or declaring the same*, or by some person thereunto by him lawfully authorized by writing."—*Comp. L.*, § *4692.*

The interest which is obtained by an execution purchase which is not lawfully redeemed is precisely the same that is obtained by a purchase paid for under an executory contract. It entitles the purchaser or his assigns to a deed whenever they choose to ask for it. There is no right to possession of the land before deed, unless it has been agreed upon; but as soon as deeded the right is complete.

Until June 15, 1872, Drury retained the execution title. He then assigned it by deed to Theodore Campau. It cannot be maintained that at that time Theodore was not in a position to purchase. All rights that he had ever held before had been divested by the Godfrey deed and the partition proceedings, and he was to all real intents and purposes a stranger. The sheriff's deed to him made his title legal in form, and being anterior in effect to the one made to Butler, must prevail against it.

I think, therefore, that the judgment must be reversed, as erroneous.

The court being equally divided as to whether there was error in the rulings of the court below, the judgment is affirmed under the statute.—*Comp. L.*, § *4923.*

---

The counsel for defendant in error afterwards moved for costs of the supreme court, citing, among other things, *Supreme Court Rule 48* and *Comp. L.*, §§ *7401–2.*

THE COURT held that no costs were recoverable upon an affirmance by a divided court under the statute.