# JANUARY TERM, 1901.*

## STEWART v. McLAUGHLIN'S ESTATE.

1. LAND CONTRACTS—SURRENDER—STATUTE OF FRAUDS.
Under 3 Comp. Laws 1897, § 9509, providing that no estate or interest in lands, other than leases for a term not exceeding one year, shall be created or surrendered unless by act or operation of law or by deed or conveyance in writing, the vendee in a land contract cannot surrender his interest thereunder by parol.

2. SAME—RELEASE OF GUARANTOR.
A parol surrender of a land contract, not followed by a conveyance by the vendor or by any other act on his part inconsistent with the contract rights of the vendee, will not amount to a surrender by operation of law, so as to prevent the vendor from recovering on a guaranty of payment of the contract.

3. SAME—ACTION ON GUARANTY—DAMAGES.
Where land is conveyed under a guaranty that an existing contract for the purchase thereof will be paid, the measure of damages, in an action by the grantee on the guaranty, is the difference between the price agreed to be paid for the land and its real value at the time the contract is broken.

Error to Wayne; Donovan, J. Submitted June 7, 1900; opinion filed (for reversal) February 27, 1901. . Rehearing granted March 19, 1901; former order reversed September 25, 1901.[1]

Charles C. Stewart presented a claim against the estate of Frank McLaughlin, deceased, under a contract of guaranty. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a

---

* Continued from Vol. 125.

[1] A second application for rehearing, made by claimant, was denied November 4, 1901.

judgment for defendant, claimant brings error. Affirmed.

*Charles C. Stewart* (*Jay Fuller*, of counsel), *in pro. per.*

*Alfred Lucking*, for appellee.

LONG, J. It appears that McLaughlin and wife, on September 30, 1892, made a contract with Mrs. Whittingham to sell to her certain real estate. Subsequently McLaughlin and wife deeded the land to Stewart, the claimant here, which deed contained a warranty that "said contract will be paid according to its terms." McLaughlin died in 1894, and his wife was appointed administratrix of his estate. Commissioners on claims were appointed, and made their report September 5, 1894. No claim was then made, but subsequently the commission was revived, and a claim was then filed by claimant under this contract of guaranty. In January, 1894, Mrs. Whittingham assigned the contract to one Peoples, and in November following Peoples assigned it to McGill. Only a small amount was ever paid on the contract. The amount claimed is $1,775. The claimant urged the right to recover from the estate the whole amount remaining unpaid on the contract, by reason of the guaranty of the performance of the contract. The defendant estate claimed that the contract had been surrendered to the claimant and accepted by him, and that therefore the guaranty was discharged.

McGill testified that in the early part of 1895 he surrendered the contract to the claimant; that he took it into claimant's office and handed it to him. He further testified that it had been arranged some time before that it would be surrendered to save claimant any trouble in foreclosure; that claimant accepted it and said it was satisfactory to him. The claimant denied that he ever accepted the surrender, or that the contract was ever surrendered to him with the purpose of such acceptance.

The court instructed the jury upon the question of surrender as follows:

"If you find that the claimant and McGill agreed that the contract should be thrown up, surrendered, and McGill did deliver up and Stewart did accept the contract with that understanding, and that they thereafter for several years acted upon and treated such surrender as complete and binding, and Stewart treated the property as his own, free from the contract, and never made any claim to the existence or validity of it until the beginning of this proceeding, then the guaranty would be discharged. * * * Of course, the testimony is all recent, and has been well argued and clearly placed before you, and is a matter entirely for you to sum it up. The inquiry is, Did McGill take the contract to Stewart and deliver it to him, and was it accepted by Stewart at the time? that is, Stewart accept the contract,—consent to the release of McGill and the release of all liability? There is a square conflict between these two, with some testimony each way, in relation to it. Did Stewart ever afterwards demand of McLaughlin, or the estate represented by his widow, any payment — or Whittingham — of the guaranty? The middle of the case, the center of the case, is either a surrender mutual, where minds fully meet and agree to it, or not. If there was not, your verdict would be for $1,775. If there was a complete surrender and acceptance, and surrender and release, your verdict would be, 'No cause of action.'"

The jury returned a verdict in favor of the defendant estate. Claimant brings error.

It appears that the lands mentioned in the contract were vacant lots, and no one was in actual possession. There is a stipulation in the contract, however, giving the vendee the right of possession of the premises. Mrs. McLaughlin testified that, after the contract was signed, she never heard anything about it until May, 1899; that the claimant never called upon her for its payment, though McLaughlin died in 1894; that Stewart never tendered her a deed of the property; that she never knew the contract had been assigned to other parties.

The principal question in the case is whether the sur-

render of the contract operated to discharge the grantors. Under the charge of the court, the jury found that the contract had been lawfully surrendered. It is insisted, however, by the claimant that it could not be surrendered except by a writing signed by McGill. Section 9509, 3 Comp. Laws 1897, provides:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing."

It does not appear in this case that the claimant ever agreed to receive a surrender of the land; nor did he ever enter into possession of it on the surrender of the contract; nor does it appear that he has taken any steps towards a sale of the premises to any other party; nor is it claimed that the contract was delivered up to him in contemplation of his making such sale to another. The cases cited by defendant's counsel in which it is held that a surrender of a contract for the sale of land might be made, which would operate to discharge the liability of the vendee, though the surrender was not in writing, are based upon the ground that the vendor has, by some arrangement made with a third party, parted with the title to the land, and has thus placed himself in a position where he cannot fulfill the terms of the contract by a conveyance, or, as in the case of *Sullivan* v. *Dunham*, 42 Mich. 518 (4 N. W. 223), where the vendee has brought suit for a share of the proceeds of a sale of the land theretofore made by the consent of such vendee.

"The term 'surrender by operation of law' is properly applied," says Taylor in his work on Landlord and Tenant, "to cases where the owner of a particular estate has been a party to some act the validity of which he is by law afterwards estopped from disputing, and which would not

be valid if his particular estate continued to exist. Thus, where a lessee for years accepts a new lease from the reversioner, he is estopped from saying that his lessor had no power to make such a lease; and, as the lessor cannot grant a new lease until the prior one has been surrendered, the acceptance of the new lease necessarily implies a surrender of the former one. Such a surrender is an act of law, and takes place independently of the intention of the parties. All such acts, however, as bind parties to a surrender, operate by way of estoppel, and must be acts of notoriety, not less formal and solemn than the execution of a deed." 2 Tayl. Landl. & Ten. (8th Ed.) § 507.

Surrender by act and operation of law is excepted out of our statute, but there was no such surrender here. In *Donkersley* v. *Levy*, 38 Mich. 54, a new lease on different terms was held to work a surrender of the first by operation of law. There is, however, a distinction between the surrender of a lease and the surrender of a land contract of purchase. A lease of land may be effective and valid for a year, though resting in parol. 3 Comp. Laws 1897, § 9511. Under our statute a contract for the sale of land must be in writing, subscribed by the party, or by some person thereunto by him lawfully authorized by writing. Id. § 9509. The contract is one for title, while a lease is for possession for a term. A tenant under a lease, relinquishing all he receives, viz., possession, and allowing his landlord to lease to a third party, is estopped from denying the surrender of the first lease. In this State the doctrine of estoppel cannot, however, be applied for the purpose of conveying title. *Hoyes* v. *Livingston*, 34 Mich. 388. It is true, as held in *Sullivan* v. *Dunham*, *supra*, that the statute of frauds, in providing that a surrender of any interest in lands must be in writing, does not prevent one who has given back a land contract held by him, in order that the land may be conveyed to another, from recovering the consideration for which he gave it up, as by bringing suit he ratifies the conveyance, and precludes himself from claiming any interest in the lands. In the present case the land was not received back by the

grantor; nor did he or his grantee make any sale of it to a third party, or attempt to do so. There was, therefore, no surrender by operation of law.

It was said in *Grunow* v. *Salter*, 118 Mich. 148 (76 N. W. 325), that the court below was correct in holding that "the interest of the defendants as contract purchasers was such an interest in land as could not be surrendered by parol;" citing 3 Comp. Laws 1897, § 9509; *McEwan* v. *Ortman*, 34 Mich. 325; and opinion of Judge CAMPBELL in *Whiting* v. *Butler*, 29 Mich. 144.

It appears that the claimant and his wife made and executed a deed of the premises to the defendant estate, and left the same with the court below. We think, under the facts shown, the court below was in error in his charge, and that the verdict should have been directed in favor of claimant.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.

### ON REHEARING.

LONG, J. This case was in this court and decided in February, 1901, and is reported herewith. The judgment below was then reversed, and a new trial ordered. Defendant moves for rehearing under the claim that the question of the measure of damages was not considered in the former opinion, though raised in the briefs.

We find on examination that this question was overlooked. The facts are fully set out in the former opinion. It appears that the claimant held the contract, which had been delivered to him by McGill. He held the title under the deed made to him by McLaughlin, and at the time of the commencement of his action against the defendant estate he still held title, and made no tender of a deed to the estate until at the close of the trial of the present case, when he tendered his deed to the estate. Under such circumstances, it is the contention of counsel for defendant that no action would lie for the contract price; that the

suit must be in equity for specific performance, or at law for damages, to wit, for the difference between the value of the land and the contract price.

In this we think counsel is correct. In *Griswold* v. *Sabin*, 51 N. H. 167 (12 Am. Rep. 76), it was held that in contracts for the purchase and sale of real estate, where the vendee refuses to receive the deed and pay for the land, the measure of damages which the vendor may recover in a suit at law is the difference between the price agreed to be paid for the land and its real value at the time when the contract was broken. This doctrine is also laid down in the following cases: *Scudder* v. *Waddingham*, 7 Mo. App. 26; *Old Colony R. R.* v. *Evans*, 6 Gray, 25 (66 Am. Dec. 394); *Wasson* v. *Palmer*, 17 Neb. 330 (22 N. W. 773); 2 Suth. Dam. p. 198; 2 Warv. Vend. p. 961.

The case is very different from the case of *Foley* v. *Dwyer*, 122 Mich. 587 (81 N. W. 569). There the suit was for an installment due upon a land contract. It was said:

"Has the vendor in a land contract a right of action at law to recover installments growing due on such contract at a date earlier than that at which the vendor is required, by the terms of the contract, to make title? It is contended by the defendants that the installments are a part of the purchase price, and that the general rule is that the vendor is not entitled to recover a part of the purchase price, but is limited to a recovery of damages for the breach, or a specific performance in equity. We think the solution of the question involved is reached by the application of well-settled rules. If the defendants' covenants to pay the installments of interest and taxes were dependent on the conveyance or tender of conveyance by plaintiff, there can be no recovery. If the covenants were independent, we can see no reason why an action at law may not be maintained. The general rule is that, where a day is appointed for the payment of money, or part of it, and the day is to happen, or may happen, before the thing which is the consideration for the money is performed, an action may be brought for the money before performance. In such case it is presumed that the party relied

upon his remedy, and did not intend to make the performance a condition precedent."

In the present case the action was brought to recover the whole contract price. This suit is on the guaranty of payment of the whole contract price, and, under well-settled rules, as shown by the cases above cited, the measure of the damages would be the difference between the price agreed to be paid for the land and its real value at the time when the contract was broken. It appears that on the trial no proofs were offered of the value of the land, and no deed was tendered before suit brought. Consequently, there was no basis for a recovery by the claimant for any amount against the defendant. For this reason the court should have directed the verdict in favor of defendant.

The judgment below must be affirmed, and the former judgment entered here reversing the case will be set aside.

The other Justices concurred.