STEVENS v. WAKEMAN.

1. ESTOPPEL — DEEDS — PLAINTIFF'S CONSENT TO DEED TO WIFE ESTOPPED HIM FROM ASSERTING TITLE.

In a suit to amend a deed, plaintiff claiming that same was taken in the name of his wife alone without his knowledge and consent, when it should have been deeded to them jointly as tenants by the entireties, evidence examined, and *held*, insufficient to support plaintiff's contention; the record clearly showing that he not only consented, but directed that the deed be made in his wife's name, and for over seven years acquiesced therein.

2. SAME — EQUITIES — DEEDS — PURCHASE PRICE.

Where the wife had deeded said land to her children before commencement of suit, in view of the fact that she deeded

other property in exchange therefor, and in addition paid large sums of money on the purchase price, the equities of said children are superior to those of plaintiff husband, although a small part of the purchase price may have been paid out of joint earnings.

3. HUSBAND AND WIFE—LAND CONTRACT—ESTATES BY ENTIRETIES. The assignment of a land contract to a husband and wife created an estate by the entirety.

4. ESTOPPEL—REAL ESTATE—CONVEYANCE BY ESTOPPEL. Where plaintiff stood by and directed that the legal title to land to which he and his wife jointly held a land contract be conveyed to his wife, and acquiesced therein for over seven years, and until after her death, his claim that if it be now held that he is estopped from asserting title it will be equivalent to holding that real estate may be conveyed by estoppel, cannot be sustained, since he never held the legal title.

5. SAME—CONVEYANCE BY PAROL—FRAUDS, STATUTE OF. Plaintiff's claim that his action in directing that deed be made to his wife was a conveyance by parol and therefore void because in violation of 3 Comp. Laws 1915, § 11975, cannot be sustained, since his oral request was followed by execution of the deed in which he acquiesced for over seven years.

Appeal from Oakland; Rockwell (Kleber P.), J. Submitted January 19, 1921. (Docket No. 130.) Decided March 30, 1921.

Bill by Alvin H. Stevens against Harriet Wakeman and others to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Pelton & McGee (George A. Cram,* of counsel), for plaintiff.

*Perry & Lynch,* for defendants.

STONE, J. This case is here upon the appeal of the plaintiff from a decree dismissing his bill of com-

plaint. By his bill of complaint and the amendments thereto, plaintiff alleges that on March 7, 1911, he intermarried with one Mary A. Kimball, a widow, who died November 17, 1918, and who was the mother of the defendants herein. He claimed that soon after said marriage and on March 11, 1911, he and his wife, as assignees of Ambrose Hoyt and wife, purchased certain lands in the city of Pontiac by taking an assignment of a land contract from the said Hoyt and wife, who had purchased by land contract from one William Crombie and wife. He alleges that he fully paid the consideration named in the contract, but when the deed was taken from the said Crombie and wife on December 19, 1911, it was taken in the individual name of his wife, Mary A. Stevens, without his knowledge and consent, which operated as a fraud upon him, inasmuch as they were tenants by the entireties under the said land contract. He alleges that thereafter and by deeds bearing date July 3, 1918, his said wife purported to convey the premises to the defendants herein, without his knowledge or consent, and he claims that, by reason of the tenancy aforesaid, the title should have vested wholly in him as survivor. He prays that the deed from Crombie and wife may by decree be modified so as to contain his name as one of the grantees therein, as the husband of Mary A. Stevens; for the reason that said deed was inadvertently, fraudulently, and by mistake, executed without his name being inserted therein as one of the grantees. He further prays that the deeds from Mary A. Stevens to the defendants be declared void and that they be canceled, and that he may be decreed to be the absolute owner of the premises as the survivor of himself and wife.

Defendants by answer make general denial of the allegations of fraud and mistake and, among other

things, aver that the deed was taken from Crombie and wife, the original vendors in the land contract, in Mary A. Stevens' individual name with full knowledge and consent of the plaintiff; that for a number of years after taking the deed she assumed to manage, lease and control the premises in her individual right, with the full consent and acquiescence of the plaintiff. Further, that by Mary A. Stevens deeding said premises to her children (the defendants herein) they acquired no greater interest than they would have inherited, she having died intestate.

The learned circuit judge who heard the case below made written findings of fact. After a careful reading of the record we are of the opinion that the facts found are fully supported by the evidence. The substance of such finding was as follows:

Plaintiff and his wife at the time of their marriage were upwards of 50 years of age and both had children by former marriages, who had attained their majority. At the time of the marriage plaintiff was a man of very limited means, and he had obtained from his future wife a loan of $375, which he secured by a mortgage on a parcel of land owned by him in the township of Highland. Stating the facts in chronological order, it appears that on April 2, 1910, Ambrose S. Hoyt and wife purchased by land contract the property here in question of William F. Crombie and wife for $1,850. On March 11, 1911, pursuant to a preliminary agreement, plaintiff and his wife, Mary A. Stevens, purchased the contract of the Hoyts, taking an assignment thereof, the consideration being $2,500, Hoyts' equity being $1,100, leaving a balance on same of $1,400 due Crombie and wife, the original vendors. Mrs. Stevens deeded to Hoyt and wife a parcel of land owned by her in the township of Hartland, valued at $800, to apply upon the purchase price of said land contract, Hoyts' remaining equity being

paid by notes given by the plaintiff and wife. The following September the plaintiff deeded his Highland property, upon which his wife had a mortgage, to one Russell of Detroit, plaintiff's wife joining in the deed and reciting therein that she discharged said mortgage as mortgagee. Of the selling price plaintiff retained $150 and paid his wife $150, leaving a balance due her on the unpaid mortgage of something like $190.

On the 19th day of December, 1911, plaintiff and his wife went to the American Savings Bank at Pontiac and conferred with Arthur F. Newberry, the cashier, and discussed with him the making of a deed, and negotiated a loan incident to taking a deed from Crombie and wife. Mr. Newberry drew the deed to Mary A. Stevens, as he testified he was directed by both the plaintiff and his wife to do. The plaintiff, together with a notary by the name of Merz, went to the home of Mr. Crombie and wife and had the deed executed, the plaintiff returning the executed deed to Mr. Newberry at the bank. The securing of the loan was then perfected, and Mrs. Stevens executed a mortgage on the premises and a note to the bank for $1,650, in order to take up the contract with the Crombies. It was in evidence that the deed and mortgage were both placed on record, and on the 6th day of January following the plaintiff called at the register of deeds' office and got the recorded deed and delivered the same to his wife. Subsequently the mortgage to the bank was paid by Mary A. Stevens and discharged. From the time of plaintiff's marriage in 1911 until the death of his wife in November, 1918, they occupied, as husband and wife, a portion of the premises continually and kept boarders and roomers a great portion of the time. Mrs. Stevens leased a part of the premises, executing written leases therefor, which in one or two instances were witnessed by the plaintiff. It was in

evidence that in one or two instances he referred parties inquiring about renting to his wife, stating that he had nothing to do with the matter. Insurance on the premises was maintained during this entire period in the name of Mrs. Stevens. On July 3, 1918, Mrs. Stevens deeded the property to her children, the defendants herein, and had the deeds placed in escrow with the American Savings Bank, for delivery at her death. After the grantor's death they were accordingly delivered to the defendants and placed on record.

The circuit judge concluded his findings of fact in the following language:

"During the entire time covering the period of something over 7 years while Mrs. Stevens held the record title and assumed active control over the property, which fact was known to plaintiff, I do not find that he assumed to own or make any claim to any one, of any portion of the property from his wife, but on the contrary appears to have consented to his wife paying for the property and taking the same over in her own name."

In the light of this entire record we have no doubt that the plaintiff knew and consented to the entire transactions with reference to taking title to the premises. It is incredible that he and his wife should have gone to the bank together and directed Mr. Newberry to draw the deed to Mary A. Stevens, that he would carry the deed to the home of the Crombies to be executed, see the same executed, would return it after execution in his presence to Mr. Newberry, and, knowing of the mortgage by his wife, that he should receive the deed after recording and carry the same to his wife, without knowing the contents of the deed. He appears to be a man of fair intelligence and to have had more or less to do with the making of papers relating to real estate. It will be borne in mind that Mrs. Stevens had deeded property, valued at $800, to the

Hoyts to apply upon the purchase price of the land contract. She discharged the mortgage upon the Highland property without having been repaid the loan to her husband, save $150. Mr. Newberry testified positively that Mrs. Stevens personally paid the note and mortgage. There is some claim that the note and mortgage were paid from the joint earnings of the parties in connection with the boarding and rooming house, but the evidence does not warrant the claim made by the plaintiff that he paid it himself. There is undisputed evidence in the record that Mrs. Stevens had inherited from her mother's and also from her brother's estates upwards of $1,000, which it is fair to presume went toward the payment of the note and mortgage. Certainly there would have been nothing inequitable in having the title placed in the name of Mary A. Stevens in view of the amount of money and property invested by her in the transaction, and we think the circuit judge was justified in finding that the plaintiff knew of the deed when it was given, knew that it conveyed property from Crombie and wife to Mrs. Stevens, that he not only consented, but directed the same to be done. Any other view would be inconsistent with his continued silence for a period of upwards of seven years. The learned circuit judge seems to have disposed of the case upon the ground of estoppel, and cited the case of *Heyn* v. *O'Hagen,* 60 Mich. 150, and quoted:

"The principle is well established, that if a man either by word or by conduct has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not lawfully have been done without his consent, and he thereby induces others to do that from which they otherwise might have abstained, he cannot question the legality of the act he had so sanctioned, to the prejudice of those who have so given faith to his words, or to the fair inference to be drawn from his conduct."

The trial court also cited a case decided by the supreme court of Kentucky—*Rowe* v. *Epling*, 163 Ky. 381 (173 S. W. 801)—the headnote of which reads as follows:

"Plaintiff, who sold a tract of land to defendant, and to avoid the expense of putting his own deed on record, delivered it to his grantor, who at his request conveyed the land direct to the defendant, who was put in possession and paid the entire purchase price, was thereby estopped from an action to recover the land on the ground that the sale was by parol and void."

The court below also cited 39 Cyc. p. 1350, as to the right to modify and change a land contract and the method of its fulfilment orally, and quoted:

"Contracts for the sale of land may be modified, or new contracts substituted therefor by subsequent agreement between the parties, and modification may be implied as well as by express agreement in respect of changes which may be made by parol. Thus contracts may be modified by extending or shortening the time of payments, by extending the time for closing the sale, by changing the place of payment, the amount of the purchase price, or the description of the land to be conveyed, or by substitution of a third person in the place of the purchaser."

See cases cited in notes. Also on page 1357 the following is cited:

"The implied agreement to rescind may consist in an abandonment of the contract by one of the parties assented to or acquiesced in by the other. * * * Conduct on the part of both the vendor and the purchaser which is inconsistent with the continuance of the contract of sale constitutes rescission by abandonment."

The relevant section of the statute of frauds, being section 11975, 3 Comp. Laws 1915, reads as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating

thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person there unto by him lawfully authorized by writing."

It cannot be said that the defendants are *bona fide* purchasers of the premises, but in view of the money and property paid by their mother we do not hesitate to say that their equities are superior to those of the plaintiff. It is, in our judgment, a question of superiority of equities. *Slatkin* v. *Schumer*, 210 Mich. 513, 523.

We are of the opinion that plaintiff is right in claiming that the interest of plaintiff and wife in the premises, under the assignment from Hoyt and wife of the Crombie contract, was that of tenants by the entireties. *Auditor General* v. *Fisher*, 84 Mich. 128, 132; *Zeigen* v. *Roiser*, 200 Mich. 328, 341.

We think that plaintiff has failed to sustain the burden of proof to show that there was either fraud or mistake in the transaction whereby the premises in question were deeded to his wife, and we think that the deed was so made, by and with his full knowledge and consent, and that he fully acquiesced in the arrangement and transaction until after her death, more than seven years thereafter. Should he now be heard to question it? It is urged by counsel for plaintiff that to hold that he should not will be to hold that real estate in Michigan can be conveyed by estoppel. We think not. It is not claimed by defendants that plaintiff conveyed the premises to his wife. It should be borne in mind that the legal title to these premises was in Crombie and wife. It is the claim of defendants that plaintiff stood by, and with full knowledge of the facts not only permitted but consented to the transfer, by deed, of this legal title to his wife, and

that he acquiesced in this transfer for many years. The evidence fully sustains this claim.

Should plaintiff be permitted to claim now that the transfer of title was invalid? We think not. But it is urged by counsel for plaintiff that the interest of a vendee cannot be transferred, assigned, released or even surrendered by parol, and the following cases are cited: *Grunow* v. *Salter*, 118 Mich. 148; *McEwan* v. *Ortman*, 34 Mich. 325; *Whiting* v. *Butler*, 29 Mich. 122, 144; *Stewart* v. *McLaughlin's Estate*, 126 Mich. 1. We think that these cases can be readily distinguished from the instant case by reason of the acts and conduct of plaintiff.

In *Whiting* v. *Butler*, Mr. Justice COOLEY said:

"If Drury had a legal title, it would be perfectly correct to say that he could not have parted with it by mere waiver. But as we have already seen, he had no legal title. The very reason for requiring the sheriff's deed is in order to pass a title which otherwise would remain in the execution debtor. Until the purchaser receives it, he holds a certificate of sale which entitles him to demand a conveyance unless the moneys specified therein are paid by a day named. But although, on the view already taken, it is of no importance in this case, it would be contrary to all analogies, if the right to his conveyance could not be waived at any time before the conveyance was actually made."

In *Stewart* v. *McLaughlin's Estate* the language of the second headnote is as follows:

"A parol surrender of a land contract, *not* followed by a conveyance by the vendor, or by any other act on his part inconsistent with the contract rights of the vendee, will not amount to a surrender by operation of law, so as to prevent the vendor from recovering on a guaranty of payment of the contract."

We conclude therefore that whether decision be based upon an estoppel, a waiver, or an assignment or

surrender by operation of law, by plaintiff's acts and conduct in the premises he is not entitled to relief, and the result reached by the court was the correct one, and the decree below is affirmed, with costs to the defendants.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. The late Justice BROOKE did not sit.